IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


TREMAIN LACY                                                                    PLAINTIFF


        v.                              Civil No. 6:11-CV-06053


DALE REED; LARRY MAY;
GRANT HARRIS; and
FRED CAMPBELL                                                                  DEFENDANTS



**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

        This is a civil rights action filed by the Plaintiff, Tremain Lacy, pursuant to 42 U.S.C. §

1983.  Plaintiff is currently incarcerated in the Arkansas Department of Corrections Wrightsville

Unit.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert

T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of

making a report and recommendation.

        Currently before me is Defendants Warden Dale Reed, Chief Deputy Director Larry May,

Assistant Director Grant Harris, and Deputy Warden Fred Campbell's Motion for Summary

Judgment.  ECF No. 31.  Plaintiff responded.  ECF Nos. 37, 38.  Defendants replied.  ECF No.

39.  After careful consideration, I make the following Report and Recommendation.

I.        **BACKGROUND**

        During the time at issue here, Plaintiff was incarcerated at the Arkansas Department of

Corrections, Ouachita River Correctional Unit ("ORCU").  Plaintiff is now incarcerated in the

Wrightsville Unit of the Arkansas Department of Corrections.  Plaintiff filed his original Complaint

on July 6, 2011.  ECF No. 1.

According to the allegations of the Complaint, on July 24, 2008, the ORCU Publications Committee Board determined that Smooth Magazine issue #37 contained nudity and therefore could not be provided to Lacy.  He was given ten days to decide whether he was going to have the publication destroyed, returned to the publisher at his own expense, mailed to a third party at his own expense, have the publication picked up after visitation, or appeal the decision.

On July 31, 2008, he appealed this decision.  The magazine was sent to the Review Board and it was determined the magazine should be seized and destroyed.  Lacy alleges Smooth Magazine issues #38, #39, and #40 were also seized and destroyed.

On June 5, 2009, Smooth Magazine issue #41 was seized.  Lacy elected to have this issue picked up at visitation.  On June 11, 2009, Lacy filed several grievances OR-09-00139, OR 09-00136, and OR-09-00119 maintaining the Defendants were violating the Equal Protection Clause by utilizing bias in the application of Arkansas Department of Corrections's Administrative Directive 07-01 ("Directive 07-01") and violating his First Amendment rights.

On June 25, 2009, Lacy was transferred to the Delta Regional Unit ("DRU") of the ADC.  On July 28, 2009, Lacy was informed by Warden Dale Reed that Smooth Magazine issue #41 had been forwarded to DRU.

Subsequently, on April 4, 2010, Chief Deputy Director May informed Plaintiff that Smooth Magazine #41 had been destroyed on July 15, 2009.  Lacy alleges he was awarded no compensation for the magazine.

In Plaintiff's Complaint he claimed (1) Warden Reed's mistake in communicating the location of issue #41 constitutes a seizure in violation of the Fourth Amendment; (2) the grievance

procedure at the ADC is insufficient; (3) Defendants violated Plaintiff's First Amendment rights when they confiscated his Smooth Magazine issues #37 and issue #41; (4) Defendants violated the Equal Protection Clause of the Fourteenth Amendment when they confiscated his Smooth Magazine issues #37 and #41; (5) Defendants violated ADC policy; and (6) Defendants violated Plaintiff's Fourteenth Amendment rights by destroying Plaintiff's property, i.e., his Smooth Magazines.  All of these claims, except Plaintiff's First Amendment claim, were dismissed on Defendants' 12(b)(6) Motion.  ECF No. 20.

As relief, Plaintiff requests a declaratory judgment, an injunction to prohibit Defendants from banning access to materials targeted to an African American audience, and both compensatory and punitive damages.

Defendants argue in their Motion for Summary Judgment: (1) Plaintiff's claims against Defendants May and Harris should be dismissed because Plaintiff failed to exhaust his administrative remedies against May and Harris; (2) Plaintiff's First Amendment claim fails as a matter of law because the Arkansas Department of Corrections ("ADC") policy on publications is reasonably related to legitimate penological interests; (3) Plaintiff's claims fail as a matter of law because they are solely based upon Defendants' supervisory positions; and (4) even if Plaintiff's claims did not fail as a matter of law Defendants are entitled to qualified immunity.

Plaintiff responded arguing he has exhausted his claims against Defendants May and Harris because his grievances, even though not naming May and Harris, gave notice of the conduct complained of and it is the prison officials' duty to determine who was responsible for the conduct. Plaintiff also argues Defendants failed to justify their reasons for denying Plaintiff's Smooth Magazine.  Plaintiff argues Smooth Magazine does not contain nudity and should not have been

denied.  Further, Plaintiff argues Defendants failed to produce issues #37 and #41 of Smooth

Magazine for Court review, therefore, the Court cannot evaluate Defendants claims that the

magazine would impact prison security.  Finally, Plaintiff argues the Defendants are responsible

for denying his Smooth Magazine and his claims against them are not based solely on their

supervisor positions.

Defendants replied reiterating the arguments in their Motion for Summary Judgment and

arguing Plaintiff failed to meet proof with proof to establish a genuine issue of material fact

regarding his First Amendment claim.

After an initial review of the briefing on the instant Motion, the Court determined it needed

to review the Smooth Magazine issue #41 contested here.  Accordingly, the Court directed

Defendants to file issue #41 with the Court under seal.  ECF No. 40.  Defendants subsequently

informed the Court that they did not have available the entire issue #41 but they did produce copies

of the cover and the pages that prompted Defendants to deny issue #41.  The Court found this

production sufficient and reviewed those pages in analyzing Plaintiff's First Amendment claim.[1]

---

[1] Plaintiff filed an objection to the Court's Order directing Defendants to submit the Smooth Magazine issue #41 for review.  In this objection, Plaintiff claims the ADC destroyed Smooth Magazine issue #41, therefore, Defendants cannot produce it for review.  Plaintiff goes on to argue that the Court should not consider the copies because it must consider the whole issue #41 to conduct a thorough examination.  ECF No. 42.  In response to Plaintiff's objection, Defendants submitted a Declaration from Shirley Lowe, Administrative Specialist for Grant Harris of the Central Office Publication Review Committee.  Ms. Lowe states that she received the Smooth Magazine issue #41 at the time it was reviewed by the committee, made copies of the cover page and the pages allegedly containing nudity, and then returned the original issue #41 back to Plaintiff's unit.  Ms. Lowe retained the copies she made in the ADC records.  It is these copies that were sent to the Court for review.  The Court finds the submitted copies, along with Ms. Lowe's declaration, are sufficient.  The Court need not review the entire issue #41 as it has the images that prompted the denial.

## II.      LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.     DISCUSSION

In his Complaint, Plaintiff made First Amendment claims related to Smooth Magazine issue #37 and #41, however, Defendants only moved for Summary Judgment related to Plaintiff's issue #41 claims.  Defendants referenced Plaintiff's claims regarding issue #37 in a footnote in their Brief: "Although Lacy alleges that his "Smooth" magazine #37 was denied on the basis of nudity on July 24, 2008 . . . [Plaintiff] did not submit any grievances until almost one full year later . . . ."  ECF No.

33, p. 3.  However, this statement does not make an argument for the dismissal of this claim. Therefore, I will not address Plaintiff's First Amendment claim relating to Smooth Magazine issue #37 in this Report and Recommendation.

    A.    <u>Exhaustion</u>

Defendants first argue Plaintiff failed to exhaust his claims against Defendants May and Harris because Plaintiff did not list these Defendants' names specifically in his exhausted greivance. Plaintiff argues that he provided notice to the ADC about his Smooth Magazine being denied and it was the ADC's responsibility to determine which of its staff were involved in such denial.

The record indicates Plaintiff exhausted four grievances related to the denial of his Smooth Magazine issues: OR-09-00119, OR-09-00136, OR-09-00139, and OR-09-00361.  In OR-09-00119, filed on June 18, 2009, Plaintiff complains of actions by Warden Reed and the "ORCU Publications Committee board" relating to the denial of his Smooth Magazine issue # 41.  ECF No. 31-8.  In OR-09-00136, filed on July 1, 2009, Plaintiff complains of actions by Deputy Warden Campbell, Major Warner, Chaplain Gillom and Sergeant Morrow relating to the denial and destruction of his Smooth Magazine issue #41.  ECF No. 31-9.  In OR-09-00139, Plaintiff complains of actions by Warden Reed, Ron Ball, and "certain officials" regarding his transfer, not receiving communications about OR-09-00119 grievance, the denial and destruction of "smooth Magazine," and being transferred without his Smooth Magazine.  Plaintiff does not indicate which issues he is challenging in this grievance and instead simply refers to "Smooth publication" and "several other Smooth Publications dating back to May 2008."  ECF No. 31-10.  In OR-09-00361, filed on July 2, 2009, Plaintiff complains of Warden Reed failing to send his Smooth Magazine issue #41 with Plaintiff when he transferred, and about the denial and destruction of issue #41 and "several others."  ECF No. 31-11.

The record also indicates the Arkansas Department of Corrections ("ADC") does not view any administrative remedies against Defendants May and Harris to be properly exhausted because Plaintiff did not comply with ADC policy by specifically naming these Defendants in any of his exhausted grievances. Declaration of Barbara Williams, Inmate Grievance Supervisor, ECF No. 31-7.

Finally, the record indicates Defendant May's position at the ADC is Deputy Director of the ADC and he also served as Chairman of the Central Office Publication Review Committee. Declaration of Larry May, ECF No. 31-5. Defendant Harris's position at the ADC is Deputy Director of Institutions and Defendant Harris also served as a member of the Central Office Publication Review Committee. Harris Declaration, ECF No. 31-6.

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries

7

of proper exhaustion." *Id.*

ADC  Directive 09-01 dictates the inmate grievance procedure at the ADC during the time in issue here. ECF No. 31-2.  With respect to step one, inmates are advised both in the administrative directive and on the grievance form that the forms must include "the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."  ECF No. 31-2 at p. 5.  Inmates are further advised that they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 claim and Claims Commission claim.  If this is not done, [inmates are advised], their lawsuits or claims may be dismissed immediately."  ECF No. 31-2, p.17.

The Eighth Circuit Court of Appeals recently affirmed a district court's grant of defendants' motion for summary judgment for failure to exhaust based on similar facts to those presented here. *See Champion v. Akins,* 498 Fed.Appx 670 (8th Cir. 2013) (unpublished opinion).[2]  In *Champion* the district court found, the plaintiff failed to exhaust his administrative remedies as to his claims against the wardens because he did not state in any of his exhausted grievances how the wardens were involved in the grieved incidents.  The Court of Appeals noted that even though the wardens read Plaintiff's grievances, Plaintiff had not made any claims against the wardens in his exhausted grievances.  *Id.*

However, one year prior to *Champion* the Court of Appeals declined to affirm a district court's similar decision granting a motion to dismiss.  *See Bower v. Kelley,* 494 Fed.Appx 718 (8th

---

[2] The unpublished Court of Appeals cases cited herein are cited pursuant to Rule 32.1A of the United States Court of Appeals for the Eight Circuit Local Rules.  Pursuant to Rule 32.1A, these opinions were issued after January 1, 2007, are persuasive to the issue presented here, and there are no published opinions on the distinct issue presented here.

Cir. 2012) (reversing the district court's grant of summary judgment for failure to exhaust).  In

*Bower,* the Court of Appeals rejected the defendants argument that the claims against them were

rightly dismissed because the plaintiff failed to name them specifically in any exhausted grievances.

*Id.*

Convoluting matters further is *Ferrell v. Norris,* 441 Fed.Appx. 399 (8th Cir. 2011)

(affirming the district court's dismissal of defendants for failure to exhaust because the plaintiff

failed to specifically name the defendants in his grievances) (unpublished opinion) and *Adams v.*

*Hobbs,* 402 Fed.Appx. 157 (8th Cir. 2010) (affirming the district court's dismissal of defendants for

failure to exhaust because the plaintiff failed to specifically name the defendants in his grievances)

(unpublished opinion).  Both of these decisions were issued prior to *Bower,* but the holdings are in

line with the *Champion* decision.  Additionally, *Bower* does not reference *Ferrell* or *Adams.*

Accordingly, it appears the clear trend in the Eighth Circuit is to require prisoner plaintiffs

to specifically name in their grievances those which they assert grievances against if the prison

grievance procedure requires such specificity.

Here, Plaintiff fully exhausted the above listed grievances, but he did not specifically name

Defendants May and Harris in those exhausted grievance.  While Plaintiff did name the "ORCU

Publications Committee board" and both May and Harris serve on this board, the ADC grievance

director found Plaintiff's failure to specifically name May and Harris pursuant to ADC  Directive

09-01, resulted in no grievance asserted against May and Harris.  ECF No. 31-7.  Therefore, the

Court finds Plaintiff failed to exhaust his claims against Defendants May and Harris pursuant to

ADC policy.  *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("level of detail necessary in a grievance

to comply with the grievance procedures will vary from system to system and claim to claim . . . it

is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *see also Champion v. Akins,* 498 Fed.Appx 670 (8th Cir. 2013); *Ferrell v. Norris,* 441 Fed.Appx. 399 (8th Cir. 2011); *Adams v. Hobbs,* 402 Fed.Appx. 157 (8th Cir. 2010).

Additionally, Plaintiff's argument that the ADC was on notice of his general complaint regarding the denial of his Smooth Magazine and it was the ADC's responsibility to determine which of its employees participated in this denial is unconvincing. The PLRA requires Plaintiff to first give the ADC the opportunity to address and correct his grievances, in compliance with the prison's grievance procedures. Directive 09-01 requires notification of the particular personnel involved in the grievances by listing each person by name. It does not impose a duty on the ADC to determine all of the ADC personnel a particular grievance may implicate. The asserted notice does not satisfy the ADC grievance procedure as outlined in  Directive 09-01, therefore, it fails to satisfy the exhaustion requirements of the PLRA.

Accordingly, there are no genuine issues of material fact as to whether Plaintiff failed to properly exhaust his claims against Defendants May and Harris pursuant to the PLRA. All of Plaintiff's claims against Defendants May and Harris should be dismissed without prejudice pursuant to 42 U.S. C. § 1997e(a).

B.      First Amendment Claims

Defendants argue Plaintiff's First Amendment rights were not violated by the denial of his Smooth Magazine issue #41 because the magazine was denied pursuant to the ADC's policy regarding publications containing nudity, and that policy is reasonably related to a legitimate penological interests.

Plaintiff responded arguing Defendants have failed to justify their reasons for denying his

Smooth Magazine issue #41.  Plaintiff argues prison restrictions on publications were narrowed by the Supreme Court in *Thornburgh v. Abbott*, 490 U.S. 401 (1989).  Further, Plaintiff argues Smooth Magazine is not a pornographic magazine and it does not contain nudity.  Additionally, Plaintiff argues the Court must view the Smooth Magazine issues confiscated in the case in order to make a ruling.

Defendants replied arguing Plaintiff has not met proof with proof by failing to show that the denial of the Smooth Magazine issue #41 was reasonably related to a legitimate penological interest.

It is unclear from Plaintiff's Complaint whether he is making a facial challenge to  Directive 07-01 (challenging the regulation itself) or claiming  Directive 07-01 was unconstitutionally applied to him when his Smooth Magazine issue #41 was confiscated.  In an effort to be thorough, I will analyze both types of challenges.

In considering alleged constitutional violations in the context of incarcerated persons, the Court recognizes that it should afford deference to the decisions made by prison administrators.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977) ("courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.") (internal quotation omitted).  Inmates, however, do not forfeit all constitutional rights upon incarceration.  *See Thongvanh v. Thalacker,* 17 F.3d 256, 258 (8th Cir. 1994).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Therefore, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Leonard v. Nix,* 55 F.3d 370, 374 (8th Cir. 1995) (internal quotations omitted).  Among other things, the "Constitution

11

protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

Prison regulations on incoming mail must be "reasonably related to legitimate penological interest." *Thornburgh v. Abbott*, 490 U.S. 401, 413-14. (1989) (citing *Turner,* 482 U.S. at 89.). Specifically, the Eighth Circuit Court of Appeals held that "prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution," however, this mail policy "must advance a legitimate penological interest." *Kaden v. Slykhuis,* 651 F.3d 966, 968 (8th Cir. 2011) (internal quotation marks and citation omitted).  In analyzing Plaintiff's facial challenge, I will consider the four factors announced in *Turner* to determine whether  Directive 07-01 is reasonably related to a legitimate penological interest.  *See Murphy v. Mo. Department of Corrections,* 372 F.3d 979, 985-86 (8th Cir. 2004)*.* These factors are: (1) whether there is a valid rational connection between the regulation and a neutral and legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise their constitutional rights; (3) the impact of accommodating that right on other inmates and prison personnel; and (4) whether reasonable alternatives to the regulation exist.  *Turner*, 482 U.S. 78, 89-90 (1987).  The *Turner* factors are not inclusive requirements but instead, are merely considerations the Court should make in determining whether the challenged regulation is reasonably related to a legitimate penological interest and constitutional on its face.  *Beard v. Banks,* 548 U.S. 521, 533 (2006).

Additionally, in analyzing Plaintiff's as-applied claim, I will consider whether Directive 07-01, even though facially valid and neutral, was applied in a way that negates the legitimate penological concerns.  *See Murphy,* 372 F.3d at 986 (8th Cir. 2004) (internal quotations omitted).  "We therefore ask whether a ban on these particular items is reasonably related to a legitimate

penological objective." *Id.* The prison authorities must review the contents of each particular item received before they may censor it. *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997). Further, the court should conduct an "'independent review of the evidence' to determine if there has been 'an exaggerated response to prison concerns' in relation to this particular item." *Murphy*, 372 F.3d at 986 (quoting *Williams,* 116 F.3d at 354).

   1.  <u>Facial challenge</u>

Directive 07-01 first explains the general policy for inmates receiving publications through the mail:

> Inmates may receive publications from recognized commercial, religious or charitable outlets. All publications are subject to inspection and may be rejected if found to be detrimental to the security, discipline or good order of the institution or if they propose, condone or provide information likely to facilitate criminal activity.

Directive 07-01, I., ECF No. 31-5. Directive 07-01 also enumerates the procedures for enforcing the policy:

> Publications may be rejected if they are believed to contain, but not limited to, the following types of information . . . sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution . . . Publications may be excluded solely because they contain sexually explicit activity or feature nudity as defined in III.D. and III.E. . . . Sexually explicit material does not include material illustrative of medical, educational, or anthropological content. For example, publications covering non-sexually explicit activities of gay rights and organizations or gay religious groups should be admitted.

Directive 07-01, IV.B., ECF No. 31-15. Finally, Directive 07-01 defines "Nudity" as:

> A depiction in which genitalia, buttocks or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

Directive 07-07, III. D., ECF No. 31-15.

As stated above, the Court will consider the four factors announced in *Turner* to determine whether Directive 07-01 advances a legitimate penological interest. *Kaden,* 651 F.3d at 968. In applying the *Turner* factors, the Court first considers whether there is a valid rational connection between Directive 07-01 and a neutral and legitimate government interest. *Id.*. Defendants argue the ADC has a legitimate governmental interest in not allowing nudity to enter its facilities. Defendants attached affidavits from prison officials stating: (1) an inmate's access to materials containing nudity could create a security risk because the inmates may use the materials to barter and pay debts; (2) these types of materials also hinder the rehabilitation of sex offenders and there is a concern that these sexually explicit materials could not be kept from sex offenders once they entered the facility; and (3) sexually explicit materials create a hostile work environment for prison staff. Warden Reed's Affidavit, ECF No. 31-3; Deputy Warden Campbell's Affidavit, ECF No. 31-4; Chief Deputy Director May's Affidavit, ECF No. 31-5; Deputy Director of Institutions Harris's Affidavit, ECF No. 31-6.

The Court finds maintaining the good order and security of the unit and preventing a negative impact on the rehabilitation of sex offenders are both legitimate penological interest. *See Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (holding security, rehabilitation, and prevention of sexual aggression among inmates were all valid penological goals) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987)); *see also Pell v. Procunier,* 417 U.S. 817 (1974). Further, the Court finds Directive 07-01 is neutral as it furthers an important governmental interest—maintaining a secure facility and rehabilitation of inmates—unrelated to the "suppression of expression." *Id.* at 261 (quoting *Thornburgh*, 490 U.S. at 415.). Additionally, the Eighth Circuit previously recognized once a suspect publication is in the prison it "may be expected to circulate among prisoners, with the

14

concomitant potential for coordinated disruptive conduct." *Id.* at 261 (quoting *Thornburgh,* 490 U.S. at 412.). Accordingly, I find there is a valid rational connection between Directive 07-01 and the neutral legitimate government interest of maintaining security in the ADC unit and preventing negative impact on the rehabilitation of sex offenders in the ADC unit. *See Harris v. Bolin*, 950 F.2d 547, 549 (8th Cir. 1991) (the rejection of an inmates incoming mail, because it was obscene, did not violate the First Amendment because a policy that allows prison officials to reject incoming mail deemed detrimental to the security of the unit does not violate the First Amendment); *Carpenter v. South Dakota,* 536 F.2d 759, 763 (8th Cir.1976) (concluding the receipt of sexually explicit materials would have a detrimental effect upon inmate rehabilitation). *See also Wickner v. McComb,* 2010 WL 3396918, at \*5 (D. Minn. July 23, 2010) (unpublished opinion) (maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards were all legitimate penological interests and a prison regulation banning sexually explicit materials from the prison unit was rationally related to these interests).

Next, the Court must consider whether there are alternative means for the inmates to exercise their constitutional right. *Kaden*, 651 F.3d at 968. Defendants argue Directive 07-01 allows inmates to send and receive mail, including a broad range of publications just as in the *Thornburgh* case. *See Thornburgh v. Abbott,* 490 U.S. 401, 417-18 (1989) (the regulation at issue permitted a broad range of publications to be sent, received, and read, thus clearly satisfying the alternative requirement of *Turner*). Pursuant to Directive 07-01, Plaintiff may receive publications that do not contain nudity or sexually explicit materials (as defined by Directive 07-01). Additionally, Directive 07-01 expressly exempts from the definitions of sexually explicit: "material of a news or information type, or material illustrative of medical, educational, or anthropological content." Directive 07-01, ECF

15

No. 31-15.  Therefore, I find Directive 07-01 allows inmates to receive alternative publications in order to exercise their constitutional rights.

Third, I must consider the impact accommodating the right will have on other inmates and prison personnel.  *See Kaden*, 651 F.3d at 968.   Defendants argue publications containing nudity are likely to circulate through the prison, be used to barter and pay debts creating a security risk, are likely to interfere with the rehabilitation of sex offenders, and create a hostile work environment for prison guards.  As stated above, the likelihood that suspect publications will circulate among the prison population is recognized by the Eighth Circuit.  *Dawson v. Scurr*, 986 F.2d at 261.  Therefore, allowing these types of publications into the ADC unit is likely to greatly impact the inmate population and ADC personnel by creating a security risk, impeding rehabilitation of sex offenders, and creating a hostile work environment for prison employees.

Finally, the Court considers whether any alternatives to Directive 07-01 exist.  *See Kaden,* 651 F.3d at 968.  Defendants argue there are no workable alternatives to allowing nudity into the prison.  In *Turner*, the Court explained the considerations to be made under this factor:

> [T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns.... But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."

*Thornburgh*, 490 U.S. at 418 (quoting *Turner,* 482 U.S. at 90-91.).  Plaintiff did not rebut Defendants' assertion that no workable alternatives exists.

Accordingly, after considering the factors set forth in *Tuner,* I find  Directive 07-01  is reasonably related to a legitimate penological interest as it advances the ADC's interest in

16

maintaining security and rehabilitating sex offenders. *See Thornburgh v. Abbott*, 490 U.S. 401, 413-14. (1989).

        2.      <u>As applied claim</u>

Plaintiff claims Defendants denied his Smooth Magazine issue #41 in violation of his First Amendment rights.[3]  The issue here is whether Directive 07-01, even though facially valid and neutral, was applied to Plaintiff in a way that negates the legitimate penological concerns. *See Murphy*, 372 F.3d at 986.  "We therefore ask whether a ban on these particular items is reasonably related to a legitimate penological objective." *Id.*  The prison authorities must review the contents of each particular item received before they may censor it. *Williams v. Brimeyer*, 116 F.3d 351, 354 ((8th Cir. 1997).  Further, the court should conduct an "'independent review of the evidence' to determine if there has been 'an exaggerated response to prison concerns' in relation to this particular item." *Murphy*, 372 F.3d at 986 (quoting *Williams,* 116 F.3d at 354).

The question here is whether there is a genuine issue of material fact as to whether the confiscation of Plaintiff's Smooth Magazine issue #41 was  reasonably related to a legitimate penological objective. *See Murphy,* 372 F.3d at 986.

Defendants argue Smooth Magazine issue #41 contained nudity in violation of Directive 07-01 and for this reason it was confiscated.  Plaintiff argues issue #41 did not contain nudity and should not have been denied.

As established above, the ban on nudity and sexually explicit material pursuant to Directive 07-01 is constitutional as the Directive is reasonably related to the legitimate penolocial interest of

---

[3] Plaintiff also claims Defendants confiscated Smooth Magazine issue #37, but as explained above Defendants did not move for summary judgment on this claim.

maintaining security and rehabilitating sex offenders.  Plaintiff's only challenge to the manner in

which Directive 07-01 was applied to his situation is his argument that Smooth Magazine issue #41

did not contain nudity.[4]  Directive 07-01 defines nudity as:

> "A depiction in which genitalia, buttocks or female breasts are exposed.  Publications
> containing nudity illustrative of medical, educational, or anthropological content may
> be excluded from this definition."

Directive 07-07, III. D., ECF No. 31-15.  The Court reviewed the pages of Smooth Magazine issue

#41 that prompted the Defendants to confiscate this issue pursuant to Directive 07-01.  The pages

submitted by Defendants and reviewed by the Court consisted of the cover of the issue, the contents

page of the issue, and two additional unnumbered pages from the issue.  These pages contained

depictions of partially exposed female breast, female breast covered with transparent mesh style

clothing, and exposed female buttocks.  Therefore, Smooth Magazine issue #41 clearly contains

nudity as defined by Directive 07-01.

Other than Plaintiff's claim that the denial of his Smooth Magazine issue #41 was

unconstitutionally denied because it did not contain nudity, he did not challenge the manner or

method Directive 07-01 was applied to him.  Accordingly, I find no reasonable jury could find

Plaintiff's constitutional rights were violated when his Smooth Magazine issue #41 was denied on

the basis that it contained nudity pursuant to Directive 07-01.  *See Scott v. Harris*, 550 U.S. 372, 380

(2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not adopt that version of the

---

[4] Plaintiff did not challenge the procedure in which the Defendants reviewed the
magazine at issue, nor the procedure that resulted in the decision to confiscate the issue.

facts for purposes of ruling on a motion for summary judgment.)" [5]

## IV.    CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (ECF No. 31) be **GRANTED**.  Further, I recommend Defendants Harris and May be dismissed from this action without prejudice pursuant to 42 U.S.C. § 1997e(a); and Plaintiff's First Amendment claim regarding Smooth Magazine issue #41 against Defendants Reed and Campbell be dismissed with prejudice.  This leaves Plaintiff's First Amendment claim regarding issue #37 for future resolution. Lastly, I recommend that Defendants Reed and Campbell be advised they may file a subsequent motion for summary judgment regarding Plaintiff's First Amendment claim regarding issue #37 if they wish to do so.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 11th day of August 2014.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[5] I did not address Defendants' *respondeat superior*, or qualified immunity arguments as I recommended Plaintiff's claim be dismissed on the merits.